Good morning, Your Honors. My name is Mark Plante. I'm here representing Plaintiff Appellant ESSAR STEEL Ltd. As this Court is well aware, during a previous review of this case or this proceeding, this Court issued a per curiam opinion last July related to a very similar issue or almost exactly the same issue that's before this Court today. That issue is whether or not ESSAR STEEL in purchasing iron ore and fines from a company in India called National Mine Development Corporation or NMDC obtained a benefit from those purchases. Given the fact that this Court is well aware of many of the facts, I won't belabor them too much. But what I'd like to do is take a few minutes to focus on our central point that we made in this case. And that was that in determining whether or not there was a benefit provided to ESSAR for these purchases, the Department of Commerce ignored the statute which tells them that in determining whether or not goods are sold at less than adequate remuneration, it should consider the prevailing market conditions for the goods in question. And those prevailing market conditions include the quality, availability, marketability, transportation, other purchases affecting price. We believe the Department of Commerce ignored the statute in this case, Your Honors. And what we did a little bit different in this review than we did in the previous one was try to find a way that we could highlight that for the Department of Commerce and later the Court of International Trade. What we did was we took world market prices from the various suppliers at the time, from Brazil, from Australia, and from published sources, as well as NMDC. And we put those prices on the same basis. In other words, we used the same currency, we put them all into rupees, we then looked at it in terms of the same weight basis, the same iron content, and the same delivery terms, an ex-mine basis, which is the way that ESSAR purchases its iron ore and fines from NMDC, an ex-mine basis. And lo and behold, all the prices were effectively the same. ESSAR is paying a world market price for a good that it purchases on that, from the mine head, similar to... From a government-controlled seller? Yes. Well, no, it is a government state enterprise. Yes, Your Honor. But if they were purchasing iron ore and fines from Brazil, or a Brazilian supplier or manufacturer was purchasing them on the same basis, they would get the same price. That's what we're saying. And you understand, the statute says that you have to determine whether there's a benefit to the recipient. And the benefit is considered as, are you getting an unfair advantage due to the government intervention? ESSAR didn't receive any unfair advantage due to the government intervention. If it had received any advantage, it was because they were in a position to purchase iron ore and fines within their own country at the mine head. So that's the advantage they had. This would be similar, Your Honor, to a petrochemical company in Saudi Arabia that could buy oil at a world market price. Under the Department of Commerce's theory, in order to determine whether they were getting a benefit, you would have to add the freight from Venezuela to that. Lo and behold, there's your margin. I think one way to look at this is to compare the differences between how the Department of Commerce looks at transportation in the anti-dumping context versus the countervailing duty context. In the anti-dumping context, they're doing the same thing basically in both situations, looking at price discrimination. In the anti-dumping context, they remove the freight for the goods sold in the United States. They would never compare an ex-factory price in the home market to a delivered price in the United States because you would effectively almost never have dumping. They would say, well, that's not a fair comparison. But on the flip side, when they're trying to compare prices in the CBD context, they compare an ex-mine or ex-factory price to a delivered price in India, even though SR never purchases it on a delivered basis. And they're effectively, in this case, creating a margin where none exist. Now I understand the previous decision was not to remand this issue back to the Court of International Trade, but I also understand that this Court will consider this issue on a de novo basis. And I hope the Court will see it. Looking at this information will decide that it warrants further remand back to the Court of International Trade. The next issue that I wanted to discuss is another smaller issue. The Department of Commerce found that SR received benefits under a special economic zone or SEZ program. However, the bond that SR received that allowed them to obtain any benefits, if there were any, under the SEZ program, was granted on January 30, 2007. However, in this case, the goods were sold, exported from India, and delivered to India. So SR, under this review, could never have benefited from those subsidies if there were any. Therefore, given the Department of Commerce's rules for tying subsidies, they should never have found a subsidy in this case. They found a subsidy because one was granted during the period of review. This is one of the unique situations where you have a fixed date within the period of review where, if a subsidy was granted, you know it had to be after that date, and you know all the goods that were exported to the United States, sold in the United States, were sold prior to that date. So there's no way that these particular goods could have benefited in any way from subsidies under this program. So we respectfully request that this Court remand that issue back to the Department of Commerce as well. I would like to retain my remaining time for rebuttal. Okay, thank you. Commissioner? Mr. Bowen or Mr. De Los Angeles? De Los Angeles, Your Honor. Okay, Mr. De Los Angeles. Thank you, Your Honor. May it please the Court. In this case, the Court of International Trade found that Commerce's final results were supported by substantial evidence. They found that the compliance with the standard of review in upholding Commerce's determination, the Court of International Trade erroneously ordered the case remanded back to the Department of Commerce without any finding of error on the part of the Department of Commerce. In the remand, the Court ordered the Commerce Department to add some extra record documents to the administrative record on remand. And we now know, based upon these additional documents, that the sequence of events that occurred was that in March 2007, ESSAR applied for a subsidy under the state government of Chattisgarh Industrial Policy Program. And that document is in the record at page 6902. In May of 2005, I'm sorry, in May of 2008, about a year, 14 months later, ESSAR responded to the Commerce Department's first questionnaire on subsidies and stated that they had no manufacturing facility in the state of Chattisgarh. And that document is in the record at page 662 for the public version and 5074 for the proprietary version. What's troubling about this is the emphasis on the failure to cooperate and accepting, you say, that we now should accept all of the representations, but because there was a failure to cooperate along the way, that there should be, nonetheless, assessed a duty, a punitive duty, a duty contrary to that which is supported by at least the current evidence? Or are you saying that the current evidence shouldn't be believed? We're saying, Your Honor, that the Court of International Trade should have affirmed, upheld the Commerce Department's determination based on the administrative record as it stood at the time the Commerce Department issued its final results. Even though, let us accept that the record was in error. Is that what I hear you saying? Yes, Your Honor. If there was any error, the error was on the fault of ESSAR Steel. ESSAR Steel could have placed these documents on the administrative record, but at the time it denied the existence of any subsidy. It denied the existence of any facility in the Chattisgarh state. It had pending its application for these subsidy benefits, was denied on September 12, 2008, which was during the period of the administrative review. I don't appreciate it. It doesn't look good. But you're saying because it doesn't look good, they should be assessed, the duty, three times that which would have been assessed based on the facts that have now come out? No, Your Honor. We're saying that the record, as it stood at the time the Commerce Department made its determination, supported by substantial evidence, the Commerce Department's determination that they failed to cooperate. I understand that, but that wasn't my question. The record has changed. We would argue that the record was improperly changed. However, even if these documents were... So your argument, as I understand it, is all about Commerce's authority to act as an independent agency and that the CIT didn't have the authority to order it to reopen the record and accept. In fact, as I understood your argument, and maybe I'm wrong, you can correct me, but that the regulation allows for Commerce to consider untimely submissions and make its own discretionary determination over whether to allow them, and that authority was usurped in this case. Yes, Your Honor. The point is that the record, as it stood at the time of Commerce's final results, clearly supported their finding that SR had not cooperated to the best of its ability, and the Court of International Trade recognized that. Do you agree that if the Court of International Trade would have had the authority to remand to Commerce and say, you didn't consider this, it is being considered in a subsequent year or a different year administrative review, and it seems to go exactly the opposite way and result in no duties, why don't you take a look at it and decide whether you think the record should be reopened and this decision should have been considered? Do you believe the CIT would have had the authority to order that kind of remand? Yes, Your Honor. Pursuant to the diamond saw blades, a request seeking additional explanation is entitled to an abuse of discretion standard of review. Here, the Court of International Trade, though, looked at the evidence, found that the evidence supported Commerce's finding. They concurred that SR failed to cooperate to the best of its ability, yet ordered the Commerce Department to place these documents upon the record and consider the documents in its remand determination. Why didn't you place the documents on the record, consider them and say, like you argue in the brief, they just further substantiate the lack of cooperation and good faith behavior by SR and that we continue to maintain our adverse fact application? Well, we had made those arguments to the Court of International Trade in the order where the Court stated that... So you thought it was futile because the Court had already rejected them when it remanded? We made those arguments. They're in the record at page 2708, I believe, or so. We made those arguments and the Court still ordered the remand. So we made those arguments. But not only that, the Court ordered, didn't just say, take a look at these documents. The Court said that it was error, that it was inconsistent and ordered that the documents be placed on the record and considered. Now, you're arguing the cross-appeal now. Don't you want to defend the rest of the decision below? Certainly, Your Honor. We believe that the determinations on the lumps and fines in the Special Economic Zone Act were supported by substantial evidence. They're essentially the same arguments that were presented to this Court in the previous appeal. Your opponent, though, says that the price from the Indian government-owned company was the same as the market price. Well, Your Honor, the Commerce Department's policy is to look to market-determined prices for actual transactions, and the regulation, and the regulation is at 19 CFR 351, 511A, states that they'll only consider government prices if they're the result of a government-run auction. These are clearly not auction prices. There's been no demonstration that they were auction prices. Additionally, SR argues that it was error to include the transportation charges, or the transportation charges are required to be included pursuant to the statute at 19 U.S.C. 1677, 5E, small Roman 4. With regard to the Special Economic Zone Act, SR alleges error because the goods produced pursuant to the Special Economic Zone Act were allegedly exported prior to the date that their application for the subsidy had been approved. However, they say that Commerce should have tied these subsidies to the actual goods produced. However, Commerce's tying regulation, and that's at 19 CFR 351, 525B5, allows tying only when the terms of the subsidy restrict the subsidy to specific goods. In other words, if there were hypothetically a subsidy export for goods that were shipped to a certain country, Commerce would tie it to the goods that were shipped to the certain country. But here, there's no restriction on the exports. It applies to all the exports by SR during the period into the Commerce Department, pursuant to the regulation applied to the subsidy calculation to all of the exports. And I'm into my rebuttal time, Your Honor. Okay, we'll hear from your colleague. Thank you, Your Honor. Mr. Boland. Good morning. May it please the Court, I'm Nathaniel Boland of Skadden Arps on behalf of Defendant Cross-Appellant United States Steel Corporation. I'll try to use my time not to repeat any arguments just advanced by counsel for the government, but to begin by emphasizing a few points on our affirmative issue, and I'm, of course, happy to take questions on the other two issues on iron ore, the SEC Act. The failure to act to the best of one's ability is, as this Court has held in Nippon Steel and a number of other cases, the statutory trigger for the application of adverse facts available. And SR, by refusing to cooperate with Commerce in the underlying proceeding here, met all the requirements for the application of adverse facts available here. The evidence that was later produced by SR only confirmed that it had in its possession at the time Commerce was asking for information on the iron ore beneficiation facility in Chattisgarh, relevant documents that it had applied for the Chattisgarh Industrial Policy Program, and it was pending an application or ruling on that application. Now, I'm aware of no case that holds that the Department of Commerce is required to consider evidence that has been withheld by a respondent or another interested party when evaluating Commerce's decision to apply adverse facts available. And indeed, this Court's decision in Nippon Steel, which has a very analogous fact pattern, illustrates that that is not a requirement in the statute, and that is not proper for Commerce to be required to consider that information. You're saying they have no discretion at all to consider it? They have the discretion to apply adverse facts available or not, but if you look at the statutory scheme, and in particular Section 1677 M.E., which deals with the consideration of evidence, Commerce shall not decline to consider evidence that has been timely produced by a respondent and for which the respondent has acted to the best of its ability to produce. But the converse of that is that Commerce may decline to consider evidence that does not meet those requirements, and that's clearly the case here with respect to the information that ESSAR later produced in the subsequent proceeding. One point I guess I would diverge slightly from the counsel for the government on is the question of whether it's appropriate to consider this later produced evidence when, assuming you agree that the application of adverse facts available is appropriate here because ESSAR failed to act to the best of its ability, but whether then in corroborating the rate that Commerce ultimately applied here, whether it's appropriate to consider that later produced evidence. We would strongly argue that that is not appropriate here. There's nothing in the statute that requires that, and indeed the policy implications of that would be huge here. The ability of a respondent or other interested party to withhold evidence and not meet the deadline set by Commerce under its administrative reviews, which are, as you well know, governed by strict statutory deadlines, would enable the respondent to selectively produce information, control the proceedings, and far from ensuring accuracy, as was the concern of the Court of International Trade in the underlying decision here, would in fact not promote accuracy because it would lead to the inability of other interested parties in Commerce to test, verify, conduct regular proceedings in accordance with Commerce's statutory mandate. And for that reason, we think that the decision of the Court of International Trade below should be overturned. Thank you. Thank you, Mr. Bowen. Mr. Lund? Thank you very much, Your Honor. I want to just go over the timing of this situation of the State of Chattagarsh program. In 2006, the Department of Commerce asked essentially the same questions that were asked in 2007. SR answered them basically the same way in both cases. In 2006, the Department of Commerce found that the program was not used. It wasn't until the briefing stage, where petitioners raised the issue again, that Commerce then went out and asked additional questions that were more specific. When we had the more specific questions from Commerce, SR had never denied, or there were references to this beneficiation facility, just so you know. It's not a manufacturing facility. It's a pumping station. That's all we're talking about going back to our ores and fines. You take ore, you take fines, and you move them to the beneficiation facility, you mix them with water, and you pump them to a pelletization station. That's what this thing is, a pumping station. On the opposite side, Chattagarsh is on the opposite side of the country from Mumbai. And SR, when we had the questions post-briefing stage from Commerce, SR said, yes, this thing is there. And it wasn't until that stage that they applied the facts available determination. We appealed, SR appealed the case, the 2006 review, and it was in that review that the government requested the Court of International Trade to allow it to go outside the record of that case to collect additional information. Upon that, they got the information that SR could not have gotten benefits from this program. Now they're before this court arguing, excuse me, we have to look at the record as it stands in the 2007 review. And they're objecting to accepting information that they acknowledged would prove that there was no subsidy during this period. So I do find that the Commerce Department, or the government, is a bit disingenuous in this position. This court has allowed in other situations, this court has upheld the CIT in Home Products in allowing or recognizing that it can go outside the record if there were certain situations. And those situations, I believe, include situations such as this, where you have a situation where the new evidence will drastically change the administrative determination. So I believe the Court of International Trade did not abuse its discretion in determining, ordering the Department of Commerce to move information onto this record that it itself had requested, it itself had determined, showed there was no subsidy. So I believe the Court of International Trade was correct in that decision. Are you suggesting that SR did not lie to the Commerce Department in response to the questions that were asked? No, it did not lie, Your Honor. Answer, no. SR does not have an iron ore beneficiation plant in the area of Chastisburg. You just said on the record, they have a plant there, but it's a beneficiation plant, and you should understand the difference between a beneficiation plant and a manufacturing plant. No, Your Honor. You just said in open court they do have one there, but the second time Commerce asked the question, not even the first, the second time they answered, no, we don't have an iron ore beneficiation plant there. Your Honor, I guess I'm just, there was a misunderstanding on the part of my client. So it wasn't an intentional lie, it was an inadvertent lie? Your Honor, this could have been so easily answered if it was inadvertent, and I think the fact that there are references throughout the record. As I said, they're oblique, but they're references to this facility on the record. There was no rationale to lie. There was no rationale to lie? Sure there is. You want to say you don't get subsidies under the program. The easiest way to avoid that inquiry is to say you don't even have a facility there. Then there's no question you don't get subsidies under the program. Understood, Your Honor. So there actually is a rationale to lie. You might still claim it was inadvertent, but you can't say there's no rationale. Because we know now that there was no subsidy, they couldn't have gotten it, it was in the wrong location, then that's the reason why I say there was no rationale. There's no game in the system. Had we been clear? You answered the question before your application for subsidies was denied by the Indian government. So you say now, in hindsight, the fact that the Indian government has determined not to give us subsidies means there was no rationale to lie. But at the time you made the lie, you were still trying to acquire subsidies for that facility. I guess our disagreement is in terms of lie. Obviously, my client is certified to the information that was presented to the government, and I trust that they were answering the questions to the best of their ability. But that doesn't deny the fact that the Department of Commerce wants to prevent this court from considering information that it itself says proves there was no subsidy, and it was information that they themselves requested in the previous appeal. It's impenetrable to me, because the truth is so much in favor of your client, and yet it does look as if they must have known that what they were saying was inaccurate. I understand that. That's the point I was trying to make, Your Honor, is that the truth does show that I believe that it was an inadvertent error on their part. They were answering the questions from one review to the next. I'm not going to say that it's a big company in a big country. So there was a mistake made. We know now what the real facts are. The Department of Commerce felt that it was imperative in the 2006 review to open that record. I think the reason they did was they wanted to try to see if they could apply a fax available in that case, and the fax didn't work out that way. So now they want to apply a 54% rate just on this issue for SR, even though they know that that rate is not correct and cannot be corroborated. Turning back to the issue of iron-only fines and the purchase price, one thing that you never heard from the government side is any discussion of the statute. How does our decision comport with the statutory language? Because if they tried it, they can't do it, and they've never tried to do it. They've looked only at the regulations, and they've never said, this is how it's consistent with the statute. On the SEC program, they said that it can be tied to products. Well, this is a product. The SEC program could not have gotten benefits from it unless it was after January 30, 2007. Therefore, it's tied to those products. This was produced and exported and sold prior to that date. Therefore, it's tied to other products. So no subsidy should be conferred onto the products that were shipped during this review period. Thank you very much, Your Honor. Okay. Which area are you going to talk about in your two minutes? I'd like to just address the suggestion by SR that the Commerce Department ordered the remand in 2006 inappropriately. As we set out in our brief, the United States Steel raised an issue regarding the beneficiation plan from the Fourth Administrative Review. The Commerce Department, in its final results, inadvertently failed to address that issue, and we sought a remand because the Commerce Department had not addressed the issue in its final results. And under those circumstances, a remand was appropriate. It had nothing to do with the Commerce Department seeking to enforce a punitive rate or anything of the type on SR. I also wanted to point out, in response to Judge Moore's question, I was stumbling over a page site in my opening comments, and it was page 2717 with the government's response to the court's order where we raised basically all of the arguments that we've made in our brief as to why the court should not reopen the record, and the court rejected those in its published opinion. Okay. Thank you, Your Honor. Thank you, Mr. de los Andres, Mr. Bowen, Mr. Lunn. The case is taken under submission.